IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DJS PROPERTIES, L.P., | ) | |
| | ) | |
| Appellant, | ) | Bankr. Case No. 06-002 |
| | ) | |
| v. | ) | Case No. CV-07-484-S-BLW |
| | ) | |
| DON J. SIMPLOT, | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| Appellee. | ) | |
| | ) | |
| _____ | ) | |

This appeal arises from Don J. Simplot's bankruptcy case filed under

Chapter 11 of the Bankruptcy Code.  Simplot's family limited partnership, DJS

Properties, LP ("DJS"), is a creditor in the underlying bankruptcy case, and appeals

the bankruptcy court's order confirming Simplot's reorganization plan.  The plan

contemplates that Simplot's interest in DJS will be sold for the benefit of creditors.

The minority partners – Simplot's family members, mainly – contend that

liquidation is a breach of the DJS partnership agreement and would "destroy" the

value of the partnership.

On appeal, DJS does not directly attack the plan's treatment of the DJS

partnership agreement.  Instead, it raises two related arguments.  First, DJS

**Memorandum Decision and Order – Page 1**

contends that the bankruptcy court abused its discretion by allowing Simplot to assume or reject the DJS partnership agreement *after* the plan confirmation. Second, DJS contends that the plan contains overly broad exculpation provisions.

For the reasons discussed below, the Court finds that the bankruptcy court did not abuse its discretion and will AFFIRM its order confirming Simplot's Chapter 11 plan.

## BACKGROUND

The debtor in this case is Don J. Simplot, a single, retired man in his seventies.  *See* ER 153-54; CCER 6.[1]  As of January 2006, when he filed his Chapter 11[2] bankruptcy petition, Simplot was a general and limited partner of DJS Properties, LP, an Idaho family limited partnership ("DJS").  *See* ER 5.  Simplot formed DJS in 1997, acting upon the advice of estate-planning professionals.  *Id.* In January 2006, when he filed his petition, Simplot held a 2% general partnership interest and an approximate 73.4% limited partnership interest in DJS.  *See* ER 5-6.

---

[1] All references to "ER" refer to the Excerpts of Record filed by Appellant DJS.  (*See* Docket No. 10 and attachments thereto).  References to "CCER" refer to the Excerpts of Record filed by the Official Committee of the Unsecured Creditors.  (*See* Docket No. 11 and attachments thereto).

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. 109-8, 119 Stat. 23 (2005).

**Memorandum Decision and Order – Page 2**

The balance of the limited partnership interests are owned or controlled by a family trust and Simplot's children.  *See* CCER 10, 545-46.

The bankruptcy estate has brought multiple claims against DJS, including for example, claims for pre-petition fraudulent conveyances from Simplot to DJS. ER 21-22 at ¶ 1.2.44.  Conversely, DJS has filed secured and unsecured claims against the bankruptcy estate totaling several million dollars.  *See* CCER 654-73 (DJS claims); ER 35 at ¶ 5.1.2.4(b) (Plan's description of DJS's claims against the bankruptcy estate).

In September 2007, the bankruptcy court confirmed a Modified Joint Plan of Reorganization (the "Plan") that was jointly proposed by debtor-in-possession Simplot and the Official Committee of Unsecured Creditors (the "Creditors' Committee").  *See* ER 152-207 (Mem. Decision); ER 208-13 (Order).  Under the Plan, the majority of the bankruptcy estate's assets are to be transferred to a creditor's trust, which will be administered for the benefit of the unsecured creditors by a trustee pursuant to a trust agreement.  *See* ER 37 at ¶ 5.2.

Early versions of the Plan included in this transfer the bankruptcy estate's rights, claims, and interests in and against DJS.  *See* CCER 682-742 (Aug. 31, 2006 plan); CCER 743-821 (Dec. 29, 2006 joint plan proposed by Simplot and the Creditors' Committee).  DJS, however, objected to this transfer. CCER 822-36

**Memorandum Decision and Order – Page 3**

(DJS Objection).[3]  In response, Simplot and the Creditors' Committee modified the plan such that the bankruptcy estate would retain the Partnership Claims, and an estate representative (the "Estate Representative") would be appointed to administer those claims.  *See* ER 12-101.  The Estate Representative is charged with seeking to liquidate the DJS partnership.  *See* ER 22 (Plan § 1.2.44(k)).  The Estate Representative and the trustee of the creditor's trust mentioned above were to be the same person.  ER 20 at ¶ 1.2.28.

DJS has two primary objections to the Plan, one relating to the treatment of executory contracts, and the other relating to an exculpation clause limiting the Estate Representative's personal liability for, among other things, the Estate Representative's negligence.

## STANDARD OF REVIEW

The bankruptcy court's decision to confirm a reorganization plan is reviewed for an abuse of discretion.  *Computer Task Group, Inc. v. Brotby* (*In re Brotby*), 303 B.R. 177, 184 (9th Cir. B.A.P. 2003).  "Of course, a determination that a plan meets the requisite confirmation standards necessarily requires a

––––––––––––––––––––

[3]The Committee points out that this was an eleventh-hour objection.  DJS had apparently participated in plan discussions and did not object to the transfer until immediately before the objection deadline.  *See* CCER 868-69 (Committee's Feb. 14, 2007, Response to Objections to Confirmation).

**Memorandum Decision and Order – Page 4**

bankruptcy court to make certain factual findings and interpret the law." *Id.* This Court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *See id.* A finding of fact will not be reversed as clearly erroneous unless the reviewing court is left with a definite and firm conviction that a mistake has been committed. *See, e.g.*, *Rains v. Flinn* (*In re Rains*), 428 F.3d 893, 900 (9th Cir. 2005).

## DISCUSSION

## I.      Treatment of the DJS Partnership Agreement

DJS' first objection to the Plan relates to the DJS partnership agreement.[4] DJS and Simplot dispute whether the partnership agreement is an executory contract. The Plan provides that this dispute will be resolved by a post-confirmation adversary proceeding. ER 35 (Plan § 5.1.2.4(d)). More specifically, the Plan requires the Estate Representative to initiate an adversary proceeding within 60 days after confirmation if DJS had not already filed a motion seeking to require assumption or rejection of the Partnership Agreement. *Id.*

DJS does not take issue with the bankruptcy court's decision to make the

---

[4] The amended and restated partnership agreement at issue, dated March 6, 2000, is reproduced at CCER 476-546.

**Memorandum Decision and Order – Page 5**

contract assumption/rejection decision after Plan confirmation.[5]  DJS contends,

however, that Simplot cannot be allowed to assume or reject the DJS partnership

agreement after a plan is confirmed.  Rather, DJS argues that Simplot must make

that decision at or before confirmation.  In essence, then, the issue on appeal is all

about timing.

> **A.     The applicable statutory provisions implicitly permit post-confirmation assumption or rejection of executory contracts**

Assuming that the DJS partnership agreement is an executory contract,[6] the

starting point for the timing analysis is found in two code sections – 11 U.S.C. §

365 and 11 U.S.C. § 1123.

Section 365(d)(2) provides:

> In a case under chapter . . . 11 . . . of this title, the trustee may assume
> or reject an executory contract . . . *at any time before the confirmation
> of a plan* but the court, on the request of any party to such contract . . .
> may order the trustee to determine within a specified period of time
> whether to assume or reject such contract . . . .

(emphasis added).

-----------------------------------

[5] The Creditors' Committee contends that by conceding this point, DJS necessarily waived any argument that post-confirmation assumption or rejection is impermissible.  *See* Docket No. 11, at 20-22.  DJS did not waive this issue, however.  DJS's position is that Simplot must conditionally reject the contract at or before plan confirmation.  *See* Docket No. 10, at 8 n.6.

[6] The bankruptcy court expressed no opinion on this issue, *see* ER 190 n.65, and this Court therefore does not reach the issue either.

**Memorandum Decision and Order – Page 6**

Section 1123(b)(2) provides that a chapter 11 reorganization plan "*may . . .* subject to section 365 . . . *provide for* the assumption, rejection, or assignment of any executory contract . . . not previously rejected under such section[.]" (emphasis added).

When sections 365(d)(2) and 1123(b)(2) are read together, two fundamental points emerge: (1) a trustee may, but is not required to, assume or reject an executory contract before plan confirmation; and (2) if a contract is not assumed or rejected pre-confirmation, the plan itself may provide for assumption or rejection. Put another way, § 365(d)(2), "[b]y providing that a trustee *may* assume an executory contract prior to confirmation of a plan, . . . does not mandate assumption only that way; assumption may also be made by way of a confirmed plan as provided by § 1123(b)(2)." *Alberts v. Humana Health Plan, Inc.* (*In re Greater Se. Cmty. Hosp. Corp.*), 327 B.R. 26, 33 (Bankr. D.D.C. 2005). *Cf.* Fed. R. Bankr. P. 6006(a) (referring to a proceeding to assume or reject "other than as part of a plan"). And, more importantly, these sections arguably allow the bankruptcy court to approve a plan that provides for post-confirmation assumption or rejection of an executory contract. After all, both sections are permissive, and nothing expressly prohibits a plan from "providing" for assumption or rejection by selecting a post-confirmation date for that action.

**Memorandum Decision and Order – Page 7**

This interpretation of §§ 365 and 1123 does have its weaknesses.  In fact, DJS's strongest point is that because § 365(d)(2) expressly permits the trustee to assume or reject executory contracts *before* plan confirmation, by negative implication, the trustee cannot take the same action *after* plan confirmation.  This interpretation of § 365(d)(2) is bolstered by dicta from many courts indicating, for example, that the "normal deadline" for the trustee to assume or reject executory contracts is the date the plan is confirmed.[7]

But despite the logical appeal of this argument, the bankruptcy court correctly construed §§ 365(d)(2) and 1123(b)(2) under the facts of this case.  First, although the unvarnished statutory language does not expressly allow post-confirmation assumption or rejection, Congress intended to treat executory contracts flexibly in chapter 11 reorganizations.  *See generally Diamond Z. Trailer, Inc. v. JZ L.L.C.* (*In re JZ L.L.C.*), 371 B.R. 412, 422-23 (9th Cir. B.A.P. 2007). As such, a more lenient interpretation of these statutes is appropriate.  Further,

---

[7] *Hiser v. Blue Cross of Greater Phila.* (*In re St. Mary Hosp.*), 89 B.R. 503, 513 (Bankr. E.D. Pa. 1988) ("[A] bankruptcy court is empowered to deny the [§ 365(d)(2)] motion and allow the debtor to wait until the normal deadline of confirmation to assume or reject the contract."); *In re Dana Corp.*, 350 B.R. 144 (Bankr. S.D.N.Y. 2006) ("'[I]t is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to assume or reject an executory contract.'") (citation omitted); *see also* John D. Ayer & Michael L. Bernstein, *Bankruptcy in Practice* § 11.26 (4th ed. 2007) ("The trustee will just naturally defer the decision [to assume or reject] as long as he can – to the time of plan confirmation, if possible.").

**Memorandum Decision and Order – Page 8**

although the Ninth Circuit has yet to consider this issue, other courts allow debtors to assume or reject an execratory contract after plan confirmation, so long as the plan provides a mechanism for dealing with that particular contract. *See Alberts*, 327 B.R. at 34; *In re Gunter Hotel Assocs.*, 96 B.R. 696, 699-700 (Bankr. W.D. Tex. 1988).

>    **B.    Courts have interpreted these statutory provisions as allowing for post-confirmation assumption or rejection**

*In re Gunter Hotel Associates*, 96 B.R. 696, is one such case.  There, the debtor wished to reject a license agreement, but, for financial reasons, did not want the rejection to take effect until 60 days after plan confirmation.  *Id.* at 697.  The licensor moved to compel an immediate rejection, advancing arguments similar to those posed by DJS here – that the assumption or rejection decision must be made at or before plan confirmation.  *Id.* at 697-99.  Ultimately, the court rejected this argument, but recognized that the language of § 365(d)(2) posed difficulties.  In discussing this statute, the court referred to it as a "daunting hurdle" and, quoting the statutory language, the court emphasized that § 365(d)(2) allows assumption or rejection "at any time *before the confirmation of a plan* . . . ."  *Id.* at 699.

Ultimately, the court resolved the issue by extending the deadline for assuming or rejecting executory contracts until sixty days after the effective date of

**Memorandum Decision and Order – Page 9**

the plan.  *Id.*  The court relied on cases holding that bankruptcy courts may retain

jurisdiction in chapter 11 cases to permit post-confirmation rejection of executory

contracts.  *Id.* (citations omitted).

Similarly, in *Alberts v. Humana Health Plan Inc.*, the court explained that

"[t]he Bankruptcy Code permits questions of assumption or rejection under a plan

to be determined after confirmation of a plan calling for such post-confirmation

determination."  327 B.R. at 34.  In that case, the debtor's reorganization plan

assumed certain executory contracts but also provided a post-confirmation escape

hatch: if the parties were unable to agree upon cure amounts, the debtor could

decline to assume the contract.  *Id.* at 29.  Later, the debtor argued that the

contracts were *not* assumed because they had not been definitively assumed at or

before plan confirmation as called for under § 365(d)(2).  *Id.* at 32-33.  The court

rejected this reading of § 365(d)(2), reasoning that the debtor's "interpretation of

§ 365(d)(2) . . . would render § 1123(b)(2) a nullity."  *Id.*

The *Alberts* and *Gunter* decisions are supported by sound policy reasons.

Although permission to assume or reject an executory contract post-confirmation

should be granted sparingly, *see Gunter*, 96 B.R. at 701, the parties to a chapter 11

reorganization should have a flexible mechanism for "clearing up uncertainties"

regarding executory contracts.  *Alberts*, 327 B.R. at 34.  *Cf. JZ*, 371 B.R. at 423

**Memorandum Decision and Order – Page 10**

(discussing the "flexibility that Congress afforded in Chapter 11 . . . cases with respect to executory contracts").

Here, from the inception of the case in January 2006 to the confirmation hearing in May 2007, DJS did not press the executoriness issue. *See* ER 192 n.69; CCER 1213-14.  And, the parties dispute whether or not the partnership agreement is executory in the first instance.  Although DJS would have the Court ignore this fact, it is important in this case.  One of the prerequisites for application of §§ 365(d)(2) and 1123(b)(2) is that before a decision can be made to assume or reject, the contract must be "executory."  If it is not executory, there is no need to assume or reject the agreement and no need to "provide for" assumption or rejection in the Plan.  Under these circumstances, the bankruptcy court properly confirmed a plan that allows the parties to clear up uncertainties regarding whether the DJS partnership agreement is executory and allow assumption or rejection to occur post-confirmation.

## C.   Allowing post-confirmation assumption or rejection does not conflict with Ninth Circuit authority on related issues

Finally, despite DJS's contentions to the contrary, a plan that allows post-confirmation assumption or rejection of an executory contract does not conflict with *Diamond Z. Trailer, Inc. v. JZ L.L.C.* (*In re JZ L.L.C.*), 371 B.R. 412, 423 (9th

Cir. B.A.P. 2007), or *In re Hernandez*, 287 B.R. 795 (D. Ariz. 2002). *JZ* and

*Hernandez* did not decide whether post-confirmation assumption or rejection is

permissible under §§ 365 and 1123. Rather, these courts decided that the ride-

through doctrine[8] applies to executory contracts that are neither assumed nor

rejected during the course of a chapter 11 case and are therefore not "provided for"

by a plan. *JZ*, 371 B.R. at 422; *Hernandez*, 287 B.R. at 799-803. Moreover, *JZ*

indirectly supports the Plan's treatment of executory contracts: A core principle of

*JZ* is that executory contracts are treated flexibly in chapter 11 cases. 371 B.R. at

423 ("What is significant for our purposes about the more rigid provisions

pertaining to chapter 7 . . . is that they illuminate the greater flexibility Congress

afforded in chapter 11 . . . cases with respect to executory contracts."). *Accord*

*Hernandez*, 287 B.R. at 803-04.

Nor does *Hernandez* address the timing issue present in this case. In

*Hernandez*, the debtors filed a plan that provided for assumption of a non-

assumable contract. 287 B.R. at 797. The non-debtor parties to the contract

objected to the plan, insisting that the debtors had to reject the contract before

confirmation. *See id.* The bankruptcy court held that even though the contract was

---

[8] "Simply stated, the ride through doctrine provides that executory contracts that are neither affirmatively assumed or rejected by the debtor under § 365 pass through bankruptcy unaffected." *In re Hernandez*, 287 B.R. at 799.

**Memorandum Decision and Order – Page 12**

non-assumable, the debtor did not have to reject it.  *Id.* at 801-02.  Rather, the

debtor could amend the plan and simply ignore the non-assumable contract, which

would trigger the ride-through doctrine.  *See id.* at 801-04.

At the time *Hernandez* was decided, the Ninth Circuit had not decided

whether the ride-through doctrine applied.  Thus, the *Hernandez* court spent some

time clarifying "exactly what the doctrine is and is not."  *Id.* at 800. Among other

things, the court explained,

> Ride-through is not an affirmative choice available to the debtor
> under § 365. Therefore, if an executory contract is addressed in
> a Chapter 11 plan pursuant to § 1123(b)(2), it must be either
> assumed or rejected. The debtor may not treat an executory
> contract in a Chapter 11 plan and at the same time, effect a ride-
> through of that contract – these are inconsistent proposals.

*Id.*

DJS cites this language in support of its position that a plan must "assume,

reject, or remain silent," and that the Plan here creates an impermissible fourth

option – postponement of the decision – not allowed by the Code.  *See* DJS

Opening Brief (Docket No. 10, at 11) ("The Plan must assume, reject, or remain

silent. Those are the only options.").  But the statement from *Hernandez* must be

read in context.  On its face, this language is arguably contrary to the result here.

That is, the DJS partnership agreement is "addressed" in the Plan, yet it is not

**Memorandum Decision and Order – Page 13**

assumed, rejected, nor does it ride through unaffected by not being mentioned in the Plan.  But the *Hernandez* court was not facing a plan that expressly postponed the assumption/rejection decision because of uncertainties concerning whether the contract was executory, as is the case here.

Instead, the *Hernandez* plan stated that the debtor was to assume the contract, yet at the same time, the debtor argued that the contract should ride through the bankruptcy proceedings.  287 B.R. at 802.  Hence the court's statements regarding the debtor's "inconsistent proposals."  There is no such inconsistency here.  More to the point, *Hernandez* did not address the timing issue this court faces.

Similarly, *JZ* did not address the timing issue. Rather, *JZ* decided that where the debtor failed to list a contract in its schedules, that contract rode through the bankruptcy proceedings unaffected.  371 B.R. at 415, 424-25.  Although the court outlined the three options – "assume, reject, or no action" – it did not decide *when* a decision must be made.  *Id.* at 422.

In sum, the bankruptcy court did not abuse its discretion in approving a plan that calls for post-confirmation assumption or rejection of executory contracts, especially considering that the condition for assumption or rejection – whether the contract is executory – is disputed.  In addition, the bankruptcy court's

**Memorandum Decision and Order – Page 14**

interpretation of 11 U.S.C. §§ 365 and 1123 was not in error.

## II.    The Exculpation Provisions

DJS next argues that the bankruptcy court erred because the Plan contains overly broad exculpation provisions.[9]  The exculpation provisions relevant to this appeal are set forth in articles 6.9 and 6.11 of the Trust Agreement.[10]

Article 6.9 releases the Estate Representative from personal liability and provides that he will be indemnified for claims of fraud, breach of fiduciary duty, gross negligence or willful misconduct.[11]  ER 79.  Article 6.11.1, entitled

---

[9] Though the parties refer to the relevant provisions as "exculpatory provisions" (and this memo does the same, as a convenient shorthand reference), the Plan contains both indemnification and exculpation provisions.  The provisions are distinct:

> While indemnification involves one party's agreement to protect the other party from claims made against it, exculpation involves one party's releasing another party from liability for otherwise valid claims that it may have against the released party.  Indemnification shifts responsibility for payment of damages from one party to another, while exculpation relieves one party from the consequences of its actions.

Kurt F. Gwynne, *Indemnification and Exculpation of Professional Persons in Bankruptcy Cases*, 10 Am. Bankr. Inst. L. Rev. 711, 725 (2002) (internal footnote citations omitted); *see also In re Metricom, Inc.*, 275 B.R. 364, 368 n.4 (Bankr. N.D. Cal. 2002).

[10] Article 5.1.2.3 of the Plan makes the exculpation provisions of the Trust Agreement applicable to the Estate Representative.  *See* ER 34.

[11] In full, Article 6.9 provides as follows:

**Standard of Care; Exculpation.**  Trustee and the members of the Executive Board shall perform the duties and obligations imposed on them by this Trust Agreement and the

**Memorandum Decision and Order – Page 15**

*Exoneration and Protection*, limits the Estate Representative's personal liability to

third parties as follows:

> Third parties dealing with the Creditors' Trust shall look only
> to the Creditors' Trust Assets to satisfy any liability incurred by
> Trustee, Trustee's Representatives or the Executive Board to
> such parties, except for instances involving fraud, breach of
> fiduciary duties, gross negligence, or willful misconduct as
> determined by a court of competent jurisdiction in a
> Determination.

---

Plan with reasonable diligence and care under the circumstances.  Trustee, Trustee's
Representatives and the members of the Executive Board shall satisfy the standard of
care applicable to trustees under Idaho Code § 15-7-302, and conduct themselves in
accordance with other applicable laws.  Except for fraud, breach of fiduciary duties, gross
negligence, or willful misconduct as determined by a Final Order of a court of competent
jurisdiction (any such order of such court is referred to in this Trust Agreement as a
"Determination"), Trustee, Trustee's Representatives and the members of the Executive
Board shall not be personally liable to the Creditors' Trust, to any Beneficiary, to the
holders of Allowed Claims in Class 5, or to Allowed Claims for priority taxes.  Except
for fraud, breaches of fiduciary duties, gross negligence, or willful misconduct as
determined by a court of competent jurisdiction in a Determination, Trustee, Trustee's
Representatives and the members of the Executive Board shall be defended, held
harmless and indemnified from time to time from the Creditors' Trust (including
applicable insurance coverages) as a Creditors' Trust Administrative Expense against any
and all losses, claims, costs, expenses and liabilities (including legal fees, costs and
expenses), and any costs of defending any action, suit, proceeding or investigation to
which Trustee, Trustee's Representatives or the members of the Executive Board may be
subject by reason of their execution in good faith of their duties under this Trust
Agreement or the Plan.  As provided above in this Trust Agreement, Trustee may obtain
for the benefit of Trustee, Trustee's Representatives, and the members of the Executive
Board at the reasonable expense of the Creditors' Trust as a Creditors' Trust
Administrative Expense, insurance against claims of liability, damage awards and
settlements.

ER 79.

**Memorandum Decision and Order – Page 16**

ER 80.

On appeal, DJS objects only to Article 6.11.1.  DJS contends that this provision is overly broad because third parties must be able to reach the Estate Representative's personal assets if the Estate Representative is negligent or breaches a contract.  Under the current Plan, if the Estate Representative was, in fact, negligent, the Creditors' Trust would indemnify him.  ER 79 (§ 6.9).  And if the assets in the Creditors' Trust were insufficient to satisfy any such claim, the third party would have no recourse to the Estate Representative's personal assets. ER 80 (§ 6.11.1).

Further, DJS is not concerned with some hypothetical claim by a third party; DJS is itself threatening to sue the Estate Representative.  DJS contends that, in carrying out his duties under the Plan, the Estate Representative will inevitably breach the DJS partnership agreement.  The Plan calls for the Estate Representative to liquidate Simplot's interest in DJS.  *See* ER 22 (Plan § 1.2.44(k)).  According to DJS, such a liquidation is a breach of the DJS partnership agreement.  *See* CCER 479, 503, 509 (DJS Partnership Agreement §§ 1.5, 6.1, and 8.2).[12]

The bankruptcy court – well aware of this dispute – concluded that the

---

[12] The Creditors' Committee contends that liquidation is possible without breach, and, in any event, if DJS is successful in its claims, its recovery should be limited to assets in the Creditors' Trust.

**Memorandum Decision and Order – Page 17**

exculpation provisions were "reasonable" under the circumstances.  ER 201-02.  In

framing its analysis, the bankruptcy court looked to cases decided under 11 U.S.C.

§ 328.[13]  Section 328 provides that a bankruptcy trustee may retain professionals to

assist the trustee in carrying out its duties "on any *reasonable* terms and conditions

of employment, . . . ." (emphasis added).

On appeal, DJS contends that the § 328/"reasonableness" analysis is

irrelevant to the Estate Representative.  *See e.g.*, Doc. No. 12, at 9 (DJS Reply

Brief, "Citing § 328 and cases applying it a thousand times will never make § 328

applicable to the Estate Representative/Trustee.").  More specifically, DJS argues

that the true inquiry is not whether the exculpation clause is "reasonable," but

whether it is permissible in the first place.  Upon review, this court concludes that

the bankruptcy court correctly applied case law considering § 328; and the

bankruptcy court did not commit clear error in concluding that the exculpation

clause was "reasonable."

### A.     The Estate Representative is arguably immune from liability for negligent acts

Although not discussed by the bankruptcy court, there is an alternative

---

[13] *See* ER 200-01 (bankruptcy court's memorandum decision, citing, among other cases,
*United Artists Theatre Co. v. Walton*, 315 F.3d 217, 220 (3d Cir. 2003), and *Bodenstein v.
KPMG Corp. Fin. LLC* (*In re DEC Int'l Inc.*), 282 B.R. 423, 429 (W.D. Wis. 2002)).

**Memorandum Decision and Order – Page 18**

reason for upholding the court's decision.  The exculpation clause is unobjectionable because it simply restates the standard of care applicable to the Estate Representative.  The Plan itself expressly provides that the Estate Representative has all the defenses of a trustee under the Bankruptcy Code.  *See* ER 37 at § 5.2.2.  And in *Curry v. Castillo* (*In re Castillo*), 297 F.3d 940 (9th Cir. 2002), the Ninth Circuit held that a trustee is entitled to quasi-judicial immunity for negligent acts.  Further, the acts the Estate Representative will undertake with respect to the DJS partnership – selling its assets, mainly – are "adjudicative" in nature and should therefore qualify for immunity.  *See In re Continental Coin Corp.*, 380 B.R. 1, 10 (Bankr. C.D. Cal. 2007)(holding that a trustee is excused from simple or ordinary negligence, but is not protected from actions deemed to be gross negligence or intentional acts).

DJS did not object to this provision of the Plan on appeal.  And, if under the Plan the Estate Representative is not liable for negligence in the first place (*see* ER 37 at § 5.2.2), a separate plan provision that limits his liability for negligence (or lesser conduct, such as breach of contract) is likewise unobjectionable.  *See In re Firstline,* No. 06-70145, 2007 WL 269086, at *2 (Bankr. M.D. Ga. Jan. 25, 2007) (noting that a handful of courts have affirmed exculpation clauses contained in a plan, reasoning that "because the clauses do not exclude liability for gross

**Memorandum Decision and Order – Page 19**

negligence or willful misconduct, they merely restate the standard of care already in effect and are therefore unobjectionable").

### B.   Alternatively, the bankruptcy court's reliance upon § 328 is not in error

In this case, the court is addressing a chapter 11 plan that limits the liability of an estate representative appointed under § 1123(b)(3).[14]  Under § 1123(b)(3), a plan may permit an estate representative to be appointed to settle or adjust any claim or interest belonging to the debtor or his estate.  Although the court is not facing the textbook § 328 scenario involving a retention agreement between the debtor and a professional that exculpates and/or indemnifies the professional for negligence, it was not error to look to §§ 327 and 328 for guidance.  *See generally* 11 U.S.C. § 328; *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 222 (3d Cir. 2003)(discussing an exculpatory clause in the context of an application to retain a financial advisor).

---

[14] Section 1123(b)(3) provides, in pertinent part, that a plan may provide for:

    (A)    the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

    (B)    the retention and enforcement by the debtor, by the trustee, *or by a representative of the estate appointed for such purpose*, of any such claim or interest.

11. U.S.C. § 1123(b)(3) (emphasis added).

**Memorandum Decision and Order – Page 20**

DJS insists – in sweeping, general statements – that the § 328 cases are irrelevant, but it has not cited any supporting authorities.  Nor has DJS offered an alternate analytical construct.  *See* Doc. No. 10, at 15-20.[15]  On the other hand, the Creditors' Committee does not adequately explain why the § 328 cases apply. Instead, the Committee argues, simplistically, that because the § 328 cases are "bankruptcy" cases that examine indemnification clauses, they should apply here. *See* Doc. No. 11, at 26.  Finally, the bankruptcy court did not explain why it invoked the § 328 "reasonableness" cases.  *See* ER 200-02. (In the briefs below, neither party relied on these cases.  *See* Bankr. Doc. No. 599, at ¶ VII; Bankr. Doc. No. 607, at 33-34).

However, there are several Code provisions that grant sweeping power to plan proponents in creating reorganization plans that address the intricacies of a particular case.  First, § 1123(b)(6) allows a plan to "include any other appropriate provision not inconsistent with the applicable provisions of [title 11]."  Second, § 105(a) permits the bankruptcy court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provision of this title."  11 U.S.C. §

---

[15]  Although the bankruptcy court noted DJS's failure to cite supporting authority for its position regarding the exculpatory clauses, *see* ER 199 ("The objections on this point are bereft of authority"), DJS has not elaborated on appeal.  *Compare* Doc. No. 11, at 15-20 (DJS appellate brief) *with* Bankr. Doc. No. 599, at ¶ VII (DJS objection in bankruptcy court).

**Memorandum Decision and Order – Page 21**

105(a).  Finally, the introductory provision of § 1123(a) permits plans to contain

provisions "notwithstanding any otherwise applicable nonbankrupcty law."  In

combination, these provisions grant plan proponents and the court with broad

power to approve a plan that may conflict with otherwise applicable

nonbankrupcty law, so long as the plan provisions themselves are fair and

equitable and do not conflict with applicable provisions of the Code.[16]  Absent any

"applicable" code section that may conflict with a plan provision, the court is left

with § 105(a)'s standard of fairness and equity.  Reasonableness certainly qualifies

as a synonym for those concepts.

Despite no direct guidance from the Code as to the applicability of § 328

under the circumstances here, a handful of other courts examining exculpation

provisions in chapter 11 plans when faced with similar provisions applicable to

estate representatives appointed under a plan (as opposed to professionals retained

under § 328) have relied, at least in part, on cases looking to § 328.  *See, e.g. In re*

*Firstline*, 2007 WL 269806, at *2 (approving exculpation clause in chapter 11

plan; noting that "a handful of cases have considered and approved exculpation

---

[16]  Additionally, there are other sections of § 1123 that provide the bankruptcy court with discretion to look beyond the Code for guidance.  For example, § 1123(a)(7) requires plan provisions to be "consistent" with "public policy with respect to the manner of selection of any officer, director, or trustee under the plan."  Conceivably, public policy could express approval or disapproval of exculpatory clauses under certain circumstances.

**Memorandum Decision and Order – Page 22**

clauses in [a] plan, with no reference to a retention agreement") (citations omitted);

*In re WCI Cable,* 282 B.R. at 478-79 (disapproving exculpation clause in chapter

11 plan, but citing cases looking to § 328).  Absent any indication that the Code

prohibits such exculpatory clauses, both § 1123(b)(6) and § 105(a) permit the

Court to look beyond the confines of chapter 11 to deduce whether a particular

plan provision indeed poses a conflict and is fair and equitable.  Once such

provision providing guidance is § 328, which permits the employment of

professionals on "any reasonable terms and conditions of employment."

Consequently, it is not error to look to § 328 to determine whether an exculpatory

clause in a Chapter 11 context would be unreasonable or inappropriate.[17]

Second, in the § 328 arena, some courts have approved exculpatory clauses

that effectively limit a professional's liability for third-party claims.  *See United

Artists*, 315 F.3d at 222 n.4, 234.  For example, in *United Artists Theatre Co. v.

Walton*, the exculpation clause at issue provided that the debtor would indemnify

the financial advisor against "any and all losses, [or] claims . . ." with carve-outs

---

[17] The Court can point to at least one instance where a bankruptcy court did not rely upon
§ 328 at all in considering an exculpation provision in a Chapter 11 plan.  In *In re Enron Corp.*,
326 B.R. 497, 504 (S.D.N.Y. 2005), the district court noted that the bankruptcy court approved
an exculpation provision over objections, explaining that the provision was "'reasonable and
customary and in the best interests of the estates,' in conformity with applicable law and
necessary for the negotiation of the Plan."

**Memorandum Decision and Order – Page 23**

for "gross negligence, bad faith, willful misfeasance, or reckless disregard of its obligations and duties . . . ." *Id.* at 222 n.4.  The agreement went on to provide that if the indemnification was insufficient or unavailable, then the advisor would in no event contribute more than the fees it had received under the agreement.  *Id.* at 222 n.4 (¶ (b)).

Similarly, in *In re Firstline*, the court approved a chapter 11 plan that exculpated various parties, including the trustee, the debtor's chief restructuring officer, and certain other professional advisors, from "any liability" (again, with carve-outs for gross negligence, willful misconduct or breach of fiduciary duty) "to any Person served with a copy of [the Chapter 11] plan or otherwise having notice regarding the filing of the Plan . . . ."  2007 WL 269086, at *1.  Presumably, the last clause would capture some third parties.

Although § 328 may not be directly applicable, cases examining exculpatory clauses under § 328 can not be ignored.  Courts have relied upon those cases for persuasive authority in chapter 11 cases involving appointment of estate representatives.  Contrary to DJS's suggestion, nothing in the Code prohibits looking to other potentially "nonapplicable" code provisions for guidance, especially considering § 105(a)'s broad grant of discretionary authority that allows the bankruptcy court to issue any order that might be necessary or appropriate, or

**Memorandum Decision and Order – Page 24**

in other words reasonable, under the circumstances present in a particular case.  It would be far worse to consider such a clause in a vacuum and ignore the treatment of exculpatory clauses in retention agreements under § 328.  Thus, it was not error for the bankruptcy court to rely upon § 328 and its "reasonableness" analysis when examining the exculpatory clause at issue in this case.

### C.   Although the bankruptcy did not engage in a rigorous analysis as to whether the exculpatory provisions are reasonable, it did not "clearly err" in so finding

The Creditor's Committee, as the plan proponent, is responsible for showing that the exculpatory clauses are reasonable.  *See In re Metricom*, 275 B.R. 364, 371 (Bankr. N.D. Cal. 2002). Determining whether exculpatory provisions are reasonable depends on the facts of each case, *see, e.g., United Artists*, 315 F.3d at 230 n.12 (citing cases), and courts often ask the following questions, among others:

(a) Are these provisions standard in the industry?[18]

(b) Is insurance prohibitively expensive?[19]

(c) Would the professional serve without such a provision?[20]

---

[18] *See Metricom*, 275 B.R. at 372; *In re Aloha Airgroup, Inc.*, N. 04-3063, 2005 WL 1150692, at *1 (Bankr. D. Haw. Feb. 24, 2005); *In re Joan & David Halpern, Inc.*, 248 B.R. 43, 47 (Bankr. S.D.N.Y. 2000).

[19] *See Metricom*, 275 B.R. at 372; *WCI*, 282 B.R. at 479.

[20] *See Metricom*, 275 B.R. at 372; *Aloha Airgroup*, 2005 WL 1150692, at *1.

**Memorandum Decision and Order – Page 25**

(d) Is the professional likely to face claims, or, more precisely, has the case been "bitterly contested"?[21]

The bankruptcy court did not expressly consider each of these particular questions or otherwise explain in detail why the exculpatory provisions are reasonable. But it did touch upon the first question, whether such provisions are standard, and noted that neither party had presented evidence regarding "'industry custom.'"[22] ER 202. In the absence of evidence that industry custom should dictate a result other than what the Plan provided, the bankruptcy court's conclusion that the provision was otherwise reasonable is not clearly erroneous.

Moreover, the bankruptcy court was clearly mindful that DJS has threatened to sue the Estate Representative for engaging in the very task he is called to perform under the Plan: liquidating Simplot's interest in DJS. *See id.* at 27-28. This factor, particularly when combined with the bankruptcy court's familiarity with the facts and issues, weighs in favor of a "reasonableness" finding.

---

[21] *WCI*, 282 B.R. at 479 ("WCI Group and their officers and agents have a legitimate concern in these bitterly contested cases with the potential for claims being asserted against them regarding their postpetition acts."); *In re Firstline*, 2007 WL 269086 at *3 (exculpation clauses were "necessary to discourage frivolous litigation" because of one person's "efforts to obstruct the case and frustrate the efforts of the chief reconstruction officer . . . .")

[22] The bankruptcy court also referenced Idaho state law in its decision, but, as explained in Paragraph D below, this law does not bolster the finding of reasonableness.

**Memorandum Decision and Order – Page 26**

But the Committee still has not explained why the liability cap – which is broader than the provisions contained in other cases, *see, e.g. United Artists*, 315 F.3d at 222 n.4 – is reasonable or necessary.  Further, although the Committee points out that the assets in the creditors' trust would be sufficient to handle any claim, and that the Estate Representative is protected by insurance, *see* Doc. No. 11, at 31-32, these factors actually weigh against a finding that the exculpatory clauses are reasonable.  *See WCI*, 282 B.R. at 479 ("Prospective unavailability of insurance coverage may provide a basis for determining exculpation or indemnification clauses to be reasonable . . . .").

Nevertheless, although the bankruptcy court's "reasonableness" finding certainly would have benefitted from a more robust analysis, the court did not "clearly err" in finding the clauses reasonable.  Further, DJS has failed to cite any authority showing that the bankruptcy court committed an error of law in approving the exculpatory clauses.[23]

## CONCLUSION

[23] Because the Court finds that the bankruptcy court did not clearly err in its reasonableness finding, it does not consider DJS's additional argument that the exculpatory clause is inconsistent with Idaho state law concerning trusts.  *See* Reply at 10-11, Docket No. 13.  The Court notes, however, that to the extent the exculpation provisions may be inconsistent with Idaho Code § 13-7-306 or any other state law provision, 11 U.S.C. § 1123(a) provides justification that plan provisions may be proposed "notwithstanding" nonbankruptcy law.

**Memorandum Decision and Order – Page 27**

For the reasons expressed above, the Court AFFIRMS the bankruptcy court's order confirming Simplot's chapter 11 plan.



DATED:  **September 30, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge